[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plantiff Connecticut Carpentry Corporation ("Connecticut Carpentry") has brought this action to collect the balance due on three separate contracts it had with defendant Maranba Builders, Inc. ("Maranba"). All three contracts required Connecticut Carpentry to perform services and furnish materials as a subcontractor of Maranba. Maranba was operating as the Construction Manager for the Town of Somers for the renovation and conversion of a high school into an elementary school. Under the first contract Connecticut Carpentry was to supply rough carpentry work at the school for the sum of $129,780.00. (Plaintiffs Ex. 1). Under the second contract, Connecticut Carpentry was to provide toilet accessories, Toilet Partitions, and lockers work at the school for the sum of $86,000.00. (Plaintiffs Ex. 7). Under the third contract plaintiff was to provide for the installation of wood and hollow metal doors and hardware at the school for the sum of $23,700.00. (Plaintiffs Ex. 12). Connecticut Carpentry performed all the above mentioned work required under these three contracts.
In addition to performing all the work provided for in the contracts, plaintiff performed additional services when requested to do so by Maranba. This additional work was requested by Maranba representatives job site and memorialized by the plaintiff in the form of written proposals or estimates sent to CT Page 7107 Maranba. Up until the time that Maranba was removed from the project by the town, Maranba provided written change orders for the extra work performed by Connecticut Carpentry.
In addition, Connecticut Carpentry performed extra work at the oral request of Maranba, although Maranba failed or refused to sign written change orders for that extra work.
The following additional work was provided by Connecticut Carpentry at the request of Maranba.
(A) Extra rough carpentry work as follows:
1. Winter protection (change order, Ex. 2) $2,125.00
2. Repair masonry wall (change order, Ex. 3) $2,879.30
 3. Additional wood blocking (change order, Ex. 4) $6,942.59
 4. Extra soffits and facia on new garage at oral request of Maranba (Ex. 5) $2,102.00
 5. Extra work performed at oral request of Maranba (Ex. 6) $17,883.10
$31, 931.99
Numbers 1, 2 and 3 above are all evidenced by change orders signed by George A. Palacko, project manager for Maranba. Numbers 5 and 6 were performed by Connecticut Carpentry at the verbal request of Maranba. Maranba failed and/or refused to sign the change orders for this work even after the work was completed by Connecticut Carpentry.
(B) Extra work re: toilet accessories as follows:
 1. Provide toilet partitions in several rooms (change order, Ex. 8) $3,294.75
 2. Extra work to accommodate ceiling heights in bathrooms (Ex. 9) $473.00
 3. Cost increase for materials added to contract (Ex. 10) $1,403.00 CT Page 7108
4. Extra work performed (Ex. 11) $409.40
$5,580.15
Number 1 above (Ex. 8) is evidenced by a change order signed by George Palacko.
Numbers 2, 3, and 4 were performed by Connecticut Carpentry at the verbal request of Maranba. Maranba failed and/or refused to sign change orders for this work even after the work was completed by Connecticut Carpentry.
(C) Extra work re: metal doors
 1. Installed new hardware at boiler room door (change order, Ex. 13) $285.00
 2. Added labor for additional hardware (change order, Ex. 14) $170.00
 3. Additional 106 hours spent by employees to make adjustments to doors ($45.00 x 106 hrs.) (Ex. 15) $4.770.00
$5,225.00
Numbers 1 and 2 above (Exs. 13 and 14) are evidenced by change orders signed by George Palacko. The hours listed under #3 were performed at the oral request of Maranba. Maranba, however, failed and/or refused to sign change orders even after the work was completed by Connecticut Carpentry.
Thus, under contract #1, the plaintiff claims it was entitled to the following:
 For the base contract $129,780.00 For the extras $31,931.99
$161,711.99
 Plaintiff has received the following payments: $130,534.35
 Leaving a balance due of: $31,177.64 CT Page 7109
Under contract #2, the plaintiff claims it was entitled to the following:
 For the base contract $86,000.00 For the extras $5,580.15
$91,580.15
Plaintiff has received: $77,947.50
Leaving a balance due of: $13,632.65
Under contract #3, the plaintiff claims it was entitled to the following:
 For the base contract $23,700.00 For the extras $5,225.00
$28,925.00
Plaintiff has received: $9,647.25
Leaving a balance due of: $19,277.75
 Thus, in summary, plaintiff claims that it is owed: B$64,088.04
The court finds that the plaintiff did in fact provide all the work as required under the base contracts. Additionally, it performed all the extra work requested by Maranba as evidenced by the change orders. It also further provided all the extra work orally requested by Maranba, although Maranba failed or refused to sign change orders even after the work was completed by Connecticut Carpentry.
Maranba claims it is not liable for any of the requested payments, and it raises several issues which the court will address.
First: Maranba claims that some of the work was not performed in a workmanlike manner. After hearing all the evidence, the court disagrees.
There was a claim that the work performed by Connecticut CT Page 7110 Carpentry on a roof was flawed. However, Maranba failed to prove that Connecticut Carpentry's work was in any way flawed. Any flaws found with the roof were caused by the work of New Britain Roofing, and not Connecticut Carpentry. Nor did the defendant prove that any other work was performed by Connecticut Carpentry in a less than workmanlike manner.
Second, Maranba claims it is not liable for the requested payments because the "pay when paid" clauses in the three contracts were a condition precedent to Maranba's obligations to pay the plaintiff. The court disagrees. ""Where a debt has arisen, liability will not be excused because, without fault of the creditor and due to happenings beyond his control, the time for payment, as fixed by the contract, can never arrive . . .' "DeCarlo Doll. Inc. v. Dilozir, 45 Conn. App. 633, 642 (1997) citing Restaurants, Contracts, § 301; Williston Contracts, § 799. The Appellate Court in DeCarlo held that where a "pay when paid" clause was in the control of the defendant, he could not be excused for nonperformance. The court stated that the "subject to payment" clause was "not a condition precedent but a date of payment set by the defendant", supra at page 643. The court held that where there is such a change, the time for payment is neither unlimited nor discretionary and that promised performance must be rendered within a reasonable time. Clearly, Connecticut Carpentry could not control when the defendant would be paid by the town. Maranba and not Connecticut Carpentry bore the assumption of risk that Maranba would not be paid. The fact that Maranba claims it was not paid (which is questionable) does not relieve it from its debt to the plaintiff. This is especially true under the circumstances of this case where the town terminated Maranba through no fault of Connecticut Carpentry.
The case of Blakeslee Arpair Chapman v. El. Constructors,Inc., CV-0040938 J.D. of Litchfield, Feb. 21, 1945 cites numerous cases wherein a "pay when paid" clause has been interpreted as meaning that such a provision requires the contractor to pay the subcontractor within a reasonable time, even when the owner never pays the contractor.
Thus, the plaintiff is entitled to be paid the amount due under the base contract, as well as the amount due pursuant to the change orders signed by Maranba.
Third, Maranba claims in its brief that it does not have to pay Connecticut Carpentry for some of the extra work it performed CT Page 7111 at the oral request of Maranba because Maranba did not sign any change orders for that work. Maranba claims that "(p)laintiff agreed that no charge for any extra work or material will be allowed unless the same has been ordered in writing by the construction manager, and the price is stated in such order. (See Section 6, `Extras', in each of the contracts."
Maranba further states that in order for Connecticut Carpentry to be paid for the extra work it performed (whether by change order or at the oral request of Maranba), such extra work must have been agreed to by the Town, as owner, and by the Architect, in addition to Maranba.
In regard to this claim, the court finds that it was the regular course of conduct of Maranba to request Connecticut Carpentry to perform extra work not required in the three contracts. Such requests were made with the understanding that Connecticut Carpentry would subsequently submit the necessary documentation to Maranba so that a formal change order could be prepared and issued by Maranba. Connecticut Carpentry agreed to this requested course of conduct to accommodate Maranba, because waiting for the issuance of a change order would create delays in the project which was behind schedule. Yet, after the work was performed Maranba failed and refused to sign certain change orders so that Connecticut Carpentry could be paid. "Provisions in a written contract requiring written orders for changes in the work or for extra work may be waived so that the owner becomes liable for changes or extras done by oral direction." VonLanendorti v. Riorden, 147 Conn. 524, 528 (1960), WexlerConstruction Co. v. Housing Authority, 144 Conn. 187, 193,128 A.2d 540. Clearly, the parties, and especially Maranba, waived the requirement of written orders for changes in the work. Maranba cannot now say that Connecticut Carpentry is bound by the terms of the contract which Maranba waived.
As stated above, the defendant claims that the plaintiff is not entitled to collect what is due it because of restrictions in the contracts. Even if this were so, then the court finds that the plaintiff is entitled to be paid under the theory of unjust enrichment. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to contract. 5S Williston, Contracts (Rev. Ed.)§ 1479. . . . The elements of unjust enrichment are well established. Plaintiffs seeking recovery for unjust enrichment must prove "(1) that the defendants were benefitted [benefited], (2) that the defendants unjustly did not pay the CT Page 7112 plaintiff for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.'" Avotte Bros. Construction Co.v. Finney, 42 Conn. App. 578, 581, quoting Bolmer v. Kocet,6 Conn. App. 595, 612-13, 507 A.2d 129 (1986). Clearly, the defendant was benefitted [benefited] by the plaintiffs work inasmuch as defendant would not be paid by the town unless it supplied the work provided by plaintiff. Further, defendant unjustly failed to pay the plaintiff to plaintiffs detriment.
Thus, the court finds that the plaintiff is entitled to be paid by Maranba for all the work it performed at Maranba's request. The court further finds that Connecticut Carpentry is entitled to prejudgment interest in accordance with General Statutes § 37-3a for the following reasons.
 1. Through no fault of the plaintiff, Maranba was terminated from the job.
 2. Maranba made minimum efforts to see that plaintiff was paid by the town for the work plaintiff had done.
 3. Maranba for its own benefit caused the plaintiff to waive certain requirements in the contracts, and now claims that plaintiff was bound by the contract terms.
 4. Maranba claimed it had not been paid by the town for plaintiffs work. Yet unbeknownst to the plaintiff; it proceeded with arbitration against the town and managed to receive $100,000 by way of settlement. Yet it paid none of that $100,000 to the plaintiff.
 5. When Maranba received $100,000 from the town by way of settlement, it executed a general release which provides that Maranba released the town from any claims "which it may have against the Town of Somers arising out of a certain lawsuit entitled Connecticut Carpentry Corporation v. Maranba Builders, et al . . ." (Defendant's Ex. H). This left the plaintiff out in the cold.
 6. In light of the settlement, the chairman of the school committee believed the payment of $100,000 was to compensate Maranba "for whatever was left that we owed them on the project; and in addition, the situation with Connecticut Carpentry was supposed to go away." The court can only infer that when Maranba received $100,000 from CT Page 7113 the town, it was supposed to resolve the claims of Connecticut Carpentry in an equitable manner. This it has failed to do.
In summary, the court finds that the defendant has failed to pay all the sums due, which the court finds to be $64,088.04. In addition it is entitled to prejudgment interest pursuant to General Statutes § 37-3a.
Accordingly, judgment may enter for plaintiff Connecticut Carpentry against Maranba for $64,088.04 plus 10% interest from February 26, 1996.
Allen, Judge Trial Referee